

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 1:14-CR-127 |
| v. | ) |
| | ) Count 1: 18 U.S.C. § 1349 |
| CHARISE SHANELL STONE, | ) (Conspiracy to Commit Wire Fraud) |
| a/k/a CHARISE STONE CRUMBLY, | ) |
| (Counts 1-13) | ) Counts 2-5: 18 U.S.C. § 1343 |
| | ) (Wire Fraud) |
| and | ) |
| | ) Counts 6-7: 18 U.S.C. § 1014 |
| JOSE L. MARINAY | ) (False Statements) |
| (Counts 1-7) | ) |
| | ) Counts 8-9: 18 U.S.C. § 514 |
| Defendants. | ) (Fictitious Obligations) |
| | ) |
| | ) Count 10: 26 U.S.C. § 7212 |
| | ) (Obstruct and Impede Due Administration |
| | )  of Internal Revenue Laws) |
| | ) |
| | ) Counts 11-13: 26 U.S.C. § 7203 |
| | ) (Failure to File Individual Tax Return) |
| | ) |
| | )  Forfeiture Notice |

## INDICTMENT

April 2014 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

## INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment, unless otherwise stated:

## I.    Relevant Persons, Entities, and Terms

1.    Defendant CHARISE SHANELL STONE ("STONE") was and is married to T.C. and worked as a real estate agent, specializing in the negotiation and sale of distressed real estate property, which was known as short sales.

2.     NVA Management, LLC, ("NVA") was owned and operated by STONE from at least in or about September 2002 through in or about April 2010.  NVA purported to assist homeowner's with the short sale of distressed real estate property.

3.     Stone Capital Funding ("SCF") was a short sale company also owned by STONE. SCF specialized in "creative real estate solutions".

4.     Defendant JOSE MARINAY ("MARINAY") owned and operated Smart Choice Settlements ("SCS"), a settlement company, located in Annandale, Virginia.  SCS later became SCS Title and Escrow (hereinafter, "SCS").  MARINAY employed, among others, A.M. as a settlement agent and K.S. as a loan processor.  SCS completed a number of settlements for short sales involving STONE and her related entities.

5.     Short sale was a term used for a transaction requested by a homeowner allowing the sale of distressed property for an amount less than what was owed to the mortgage lender.  At times, financial institutions permitted short sales where the current borrower was unable to make required loan payments.

6.     The Internal Revenue Service ("IRS") was and is an agency of the United States Department of the Treasury responsible for enforcing and administering the tax laws of the United States and collecting taxes owed to the United States.

7.     Washington Mutual, Inc., IndyMac Bank, Countrywide, CitiMortgage, National City Bank, Bank of America, GMAC Mortgage, Wells Fargo, and Chase Home Finance, LLC, were financial institutions as defined by Title 18, United States Code, Section 20.

8.     The allegations in paragraphs 1 through 7 are realleged in each Count of this Indictment as if set forth fully therein.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

**I.    The Conspiracy and Its Objects**

9.    From in or about December 2007 through in or about May 2010, within the Eastern District of Virginia and elsewhere, the defendant CHARISE STONE and JOSE MARINAY unlawfully and knowingly did combine, conspire, and agree with others known and unknown to the Grand Jury, to commit offenses against the United States, namely, wire fraud, that is: having devised and intending to devise a scheme and artifice to defraud a financial institution, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for purposes of executing such scheme and artifice, transmit and cause to be transmitted by means of wire communications in interstate commerce, any writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

**II.    Purposes of the Conspiracy**

10.    It was a purpose of the conspiracy to defraud mortgage lenders by fraudulently inducing them to accept short sales for various properties.

11.    It was a further purpose of the conspiracy to fraudulently conceal material details concerning the short sale from borrowers, lenders, and purchasers in order for the conspirators to earn hundreds of thousands of dollars in profit.

**III.    The Manner and Means of the Conspiracy**

Defendants STONE and MARINAY and their co-conspirators employed various manners and means in furtherance of the conspiracy and scheme to defraud, including but not limited, to the following:

12.     STONE targeted distressed homeowners who owed more on their mortgage loan than the market value of the home with false promises of foreclosure rescue and financial recovery.

13.     STONE caused distressed homeowners to execute documents that authorized STONE to negotiate short sales with mortgage lenders on the homeowners' behalf.

14.     STONE acquired distressed homeowners' properties in her own name, her husband's name, or entities STONE controlled. Shortly thereafter, STONE executed contracts to sell the property to a new buyer.

15.     STONE and MARINAY made and caused to be made to mortgage lenders false representations regarding homeowners' financial and personal circumstances, including false representations that the short sale would be an arm's length transaction; was between two unrelated parties; and was the highest market offer.

16.     STONE, MARINAY, and others prepared and caused to be prepared false and fraudulent HUD-1 settlement statements that were sent to mortgage lenders. The fraudulent HUD-1 settlement statements contained false, fraudulent, and misleading information relating to liens, unrecorded mortgages, charges, and fees including realtor commissions, title search fees, attorneys' fees, title insurance, recording fees, and city, state, and county taxes.

17.     Immediately after the short sale, STONE, facilitated by MARINAY's settlement company, sold distressed homeowners' properties to new buyers at a significant profit and in violation of representations and agreements made with the short sale mortgage lender.

18.     In order to conceal significant profits STONE received by flipping distressed homeowners' properties, STONE and MARINAY caused to be prepared misleading, false, and

fraudulent information in HUD-1 settlement statements regarding unrecorded mortgages and fees that were ultimately funneled to entities STONE controlled.

19.     MARINAY shredded certain HUD-1 settlement statements to destroy evidence of the fraud scheme.

20.     STONE, MARINAY, and their co-conspirators caused wire communications to be transmitted in interstate commerce in order to further the scheme.

## IV.   The Scheme

In furtherance of the conspiracy and to effect its illegal objects, defendants STONE and MARINAY and their co-conspirators committed the following acts, among others:

### A.     Property Located at 11934 Washington Street, Fairfax, Virginia

21.     On or about November 23, 2007, STONE caused E.M. and M.T. to execute a limited power of attorney and assignment of beneficial interest in land trust granting STONE, NVA, and SCF the authority to act on their behalf.

22.     On or about November 30, 2007, STONE caused to be executed a deed transferring 11934 Washington Street from E.T. and M.T. to NVA.

23.     Between on or about December 3, 2007 and an or about March 18, 2008, STONE communicated with E.T. and M.T.'s mortgage lender, Washington Mutual, regarding a short sale on the $1,365,000 loan E.T. and M.T owed the bank.

24.     On or about January 26, 2008, STONE entered into a sales contract with W.A. to sell 11934 Washington Street for $1,185,000.

25.     On or about March 3, 2008, as a result of fraudulent representations made by STONE regarding 11934 Washington Street, Washington Mutual agreed to a short sale price of $875,000 and issued a short sale approval letter.

26.     On or about March 5, 2008, STONE and MARINAY caused to be transmitted to Washington Mutual a fictitious HUD-1 settlement statement that purported to satisfy the conditions outlined in Washington Mutual's short sale approval letter for 11934 Washington Street. The HUD-1 documented a short sale for $875,000 between E.T., M.T., and NVA that never actually occurred. The fake HUD-1 listed various settlement charges and fees including realtor commissions, closing fees, title insurance, document preparation fees, and city, state, and county taxes that were never paid.

27.     On or about March 5, 2008, STONE sent a fax to SCS falsely stating that SCF held a $250,000 unrecorded mortgage on 11934 Washington Street. The fax directed SCS to wire $250,000 to NVA's SunTrust bank account.

28.     On or about March 5, 2008, STONE and MARINAY caused to be executed a false, fraudulent, and misleading HUD-1 settlement statement for the sale of 11934 Washington Street from NVA to W.A. The HUD-1 falsely indicated that there was a $250,000 second mortgage on the property.

29.     On or about March 5, 2008, MARINAY and STONE caused Alliance Bank in Virginia to initiate an interstate wire of $250,000 to NVA.

30.     M.T. requested a copy of the HUD-1 reflecting the $875,000 short sale, STONE sent M.T. a copy of the same falsified HUD-1 received by Washington Mutual.

31.     As a result of this fraudulent transaction, on or about March 5, 2008, Washington Mutual suffered a loss of approximately $533,405 while STONE profited approximately $297,111.

**B.   Property Located at 5053 Burnside Farm Place, Haymarket, Virginia**

32.   On or about April 7, 2008, STONE caused J.P. and E.P. to execute a third party authorization form that authorized STONE to negotiate a short sale of 5053 Burnside Farm Place with J.P. and E.P.'s lender, IndyMac Bank, on mortgage loans totaling $656,953.

33.   On or about June 19, 2008, STONE caused to be recorded a deed transferring 5053 Burnside Farm Place from J.P and E.P. to NVA.

34.   On or about June 27, 2008, STONE entered into a sales contract with L.J. and J.J. to sell 5053 Burnside Farm Place for $525,000.

35.   On or about July 29, 2008, based on fraudulent representations made by STONE regarding 5053 Burnside Farm Place, IndyMac Bank agreed to a short sale price of $420,000 and issued a short sale approval letter.

36.   On or about July 31, 2008, STONE and MARINAY caused to be transmitted to IndyMac Bank a fictitious HUD-1 settlement statement that purported to satisfy the conditions outlined in IndyMac Bank's short sale approval letter for 5053 Burnside Farm Place. The fake HUD-1 documented a short sale for $420,000 involving NVA that never actually occurred. The HUD-1 listed various settlement charges and fees including realtor commissions, loan origination fees, attorneys' fees, title insurance, document preparation fees, and city, state, and county taxes that were never paid.

37.   On or about July 31, 2008, STONE and MARINAY caused to be executed a HUD-1 settlement statement for the sale of 5053 Burnside Farm Place from NVA to L.J. and J.J.

38.   On or about March 5, 2008, as a result of this fraudulent transaction, IndyMac Bank suffered a loss of approximately $257,898 while STONE profited approximately $97,881.

39.     On or about September 2, 2008, STONE sent to J.P. by facsimile a copy of the fictitious short sale HUD-1.

**C.      Property Located at 5018 Burnside Farm Place, Haymarket, Virginia**

40.     On or about August 16, 2008, STONE caused to be executed a deed transferring title of 5018 Burnside Farm Place from J.B. and S.L. to STONE as trustee.

41.     On or about September 25, 2008, STONE caused J.B. and S.L. to execute an authorization to release information form that authorized STONE to communicate with Countrywide regarding their outstanding mortgage loans totaling approximately $667,518 on 5053 Burnside Farm Place.

42.     On or about September 25, 2008, STONE entered into a sales contract with J.B. and S.L. to purchase 5018 Burnside Farm Place for $405,000.

43.     On or about December 31, 2008, STONE emailed SCS outlining the commission and disbursement totals that should appear on the HUD-1 settlement statement.

44.     On or about January 31, 2009, STONE entered into a sales contract to sell 5018 Burnside Farm Place to S.L. and B.L. for $485,000.

45.     On or about March 23, 2009, based on fraudulent representations made by STONE regarding 5018 Burnside Farm Place, Countrywide agreed to a short sale price of $405,000 and issued a short sale approval letter.

46.     On or about March 23, 2009, STONE and MARINAY caused to be transmitted to Countrywide a HUD-1 settlement statement for the short sale of 5018 Burnside Farm Place from J.B. and S. L. to STONE that contained false, fraudulent, and misleading information relating to realtor commissions and deed recording fees.

47. On or about March 24, 2009, STONE sent wiring instructions to SCS directing approximately $24,170, which consisted of realtor commissions and deed recording fees, from the sale of 5018 Burnside Farm Place be wired to NVA.

48. On or about March 24, 2009, STONE and MARINAY caused to be executed a HUD-1 settlement statement for the sale of 5018 Burnside Farm Place from STONE to D.L. and S.L.

49. On or about March 23, 2009, as a result of these fraudulent transactions, Countrywide suffered a loss of approximately $287,288 while STONE profited approximately $65,910.

**D.      21377 Larue Court, Ashburn, Virginia**

50. On or about February 22, 2009, STONE caused P.W. and T.W. to execute a deed transferring title of 21377 Larue Court from P.W. and T.W. to NVA as trustee.

51. On or about February 27, 2009, STONE entered into a sales contract with P.W. and T.W. to purchase 21377 Larue Court for $535,000.

52. On or about March 30, 2009, STONE caused to be executed a letter of authorization form that authorized STONE to communicate with CitiMortgage regarding P.W. and T.W.'s outstanding mortgage loan on 21377 Larue Court totaling approximately $676,000.

53. On or about May 8, 2009, STONE entered into a sales contract to sell 21377 Larue Court to G.S. and D.S. for $630,000.

54. On or about May 15, 2009, STONE represented to CitiMortgage that a potential short sale buyer's best and final offer was $535,000, when in truth, NVA, STONE's company, was the short sale buyer for 21377 Larue Court.

55.     On or about May 15, 2009, based on fraudulent representations made by STONE regarding 21377 Larue Court, CitiMortgage agreed to a short sale price of $535,000 and issued a short sale approval letter, which among other things, conditioned the sale on it being an arm's length transaction where the parties did not have a business or commercial relationship.

56.     On or about May 27, 2009, STONE and MARINAY caused to be transmitted to CitiMortgage and National City Bank a HUD-1 settlement statement that contained false, fraudulent, and misleading information relating to various settlement charges and fees including realtor commissions, title search fees, attorneys' fees, title insurance, recording fees, and city, state, and county taxes that were never paid.

57.     On or about May 27, 2009, STONE and MARINAY caused to be executed a HUD-1 settlement statement for the sale of 21377 Larue Court from NVA to G.S. and D.S.

58.     On or about May 27, 2009, as a result of these fraudulent transactions, CitiMortgage and National City Bank suffered a loss of approximately $192,348 and $156,402, respectively while STONE profited approximately $81,523.

59.     On or about May 28, 2009, MARINAY and STONE caused Alliance Bank in Virginia to initiate an interstate wire of $42,945.26 to STONE.

**E.      Property Located at 5021 Grand Beech Court, Haymarket, Virginia**

60.     On or about September 29, 2008, STONE caused D.T. and S.T. to execute a limited power of attorney granting STONE authority to act on their behalf regarding a short sale for 5021 Grand Beech Court.

61.     On or about September 29, 2008, STONE caused to be executed a deed transferring title of 5021 Grand Beech Court to T.C., STONE's husband.

62.     On or about June 21, 2009, T.C. entered into a sales contract to sell 5021 Grand Beech Court to T.V. and L.V. for $525,000.

63.     On or about July 15, 2009, based on fraudulent representations made by STONE and T.C. regarding 5021 Grand Beech Court, Bank of America Home Loans agreed to a short sale price of $425,000 and issued a short sale approval letter, which among other things, prohibited any transfer of the property within 30 days of the short sale.

64.     On or about August 6, 2009, STONE, MARINAY, and T.C. caused to be transmitted to Bank of America Home Loans a HUD-1 settlement statement that contained false, fraudulent, and misleading information relating to various settlement charges and fees including realtor commissions, recording fees, and grantor taxes that were never paid.

65.     On or about August 7, 2009, STONE and MARINAY caused to be executed a HUD-1 settlement statement for the sale of 5021 Grand Beech Court from T.C. to T.V. and L.V. The HUD-1 listed a fraudulent payment of $40,000 to STONE's company, SCF.

66.     On or about August 7, 2009, MARINAY and STONE caused Alliance Bank in Virginia to initiate an interstate wire of $19,500 to STONE.

67.     On or about August 7, 2009, as a result of these fraudulent transactions, Bank of America Home Loans and a loan servicing company suffered a loss of approximately $239,720 and $115,280, respectively while STONE profited approximately $91,476.

**F.      Property Located at 15067 Barlow Drive, Waterford, Virginia**

68.     On or about June 16, 2009, STONE caused M.L. to execute a limited power of attorney granting STONE authority to act on M.L.'s behalf.

69.     On or about June 1, 2009, STONE caused to be executed a deed transferring title of 15067 Barlow Drive to STONE.

70.     On or about October 8, 2009, STONE entered into a sales contract to sell 15067 Barlow Drive to D.E. for $600,000.

71.     On or about November 19, 2009, based on fraudulent representations made by STONE regarding the sale of 15067 Barlow Drive, GMAC Mortgage agreed to a short sale price of $538,000 and issued a short sale approval letter, which among other things, prohibited any third party from receiving a deed prior to the short sale closing.

72.     On or about December 11, 2009, STONE and MARINAY caused to be transmitted to GMAC Mortgage and Wells Fargo a HUD-1 settlement statement for the short sale that contained false, fraudulent, and misleading information relating to various settlement charges and fees including title insurance, liens, and real estate tax refunds that were never paid.

73.     On or about December 11, 2009, STONE and MARINAY caused to be executed a HUD-1 settlement statement for the sale of 15067 Barlow Drive from STONE to D.E.

74.     On or about December 11, 2009, as a result of these fraudulent transactions, GMAC Mortgage and Wells Fargo suffered a loss of approximately $328,806 and $99,320, respectively while STONE profited approximately $42,724.

75.     On or about December 14, 2009, STONE and MARINAY caused an interstate wire transfer of $450,000 to travel from San Francisco, California to Fairfax, Virginia.

76.     On or about December 15, 2009, MARINAY and STONE caused Alliance Bank in Virginia to initiate an interstate wire of $37,119 to STONE.

**G.     Property Located at 41313 Windybush Drive, Leesburg, Virginia**

77.     On or about September 30, 2009, STONE caused to be executed a deed transferring title of 41313 Windybush Drive to STONE.

78.     On or about March 13, 2010, STONE entered into a sales contract with M.J. and T.J. to sell 41313 Windybush Drive for $535,000.

79.     On or about April 14, 2010, STONE executed an affidavit of arm's length transaction that falsely affirmed, among other things, that the short sale for 41313 Windybush Drive was an arm's length transaction, all proceeds from the transaction were accurately reflected in the HUD-1 settlement statement, and there were no hidden terms or agreements.

80.     On or about April 14, 2010, STONE and MARINAY caused to be transmitted to JPMorgan Chase a HUD-1 settlement statement for the short sale of 41313 Windybush Drive reflecting a purchase price of $482,000 that contained false, fraudulent, and misleading information relating to various settlement charges and fees including realtor commissions and county taxes that were never paid.

81.     On or about April 15, 2010, STONE and MARINAY caused to be executed a HUD-1 settlement statement for the sale of 41313 Windybush Drive from NVA to M.J. and T.J. for $535,000.

82.     On or about April 15, 2010, as a result of these fraudulent transactions, JPMorgan Chase suffered a loss of approximately $87,490 while STONE profited approximately $44,925.

83.     On or about April 16, 2010, MARINAY and STONE caused Alliance Bank in Virginia to initiate an interstate wire of $10,214.41 to STONE.

**H.     Property Located at 43052 Sherbrooke Terrace, Leesburg, Virginia**

84.     On or about August 13, 2009, STONE caused to be executed a deed transferring title of 43052 Sherbrooke Terrace from R.B. to STONE.

85.     On or about January 30, 2010, STONE entered into a sales contract to sell 43052 Sherbrooke Terrace to G.I. for $288,000.

86.    On or about April 2, 2010, a settlement for the sale of 43052 Sherbrooke Terrace from STONE to G.I. was scheduled to held at SCS; however, the closing was cancelled because G.I.'s attorney advised G.I. not to proceed due to concerns regarding STONE's ownership of the property because STONE had not produced a short sale approval letter from JPMorgan Chase.

87.    On or about June 7, 2010, attempting to discharge the $411,109.62 mortgage R.B. and A.S. owed to JPMorgan Chase on 43052 Sherbrooke Terrace, STONE sent a fictitious international promissory note that purported to pay R.B. and A.S.'s $411,109.62 debt in full.

88.    On or about July 12, 2010, STONE contacted JPMorgan Chase to inquire when the international promissory note that she provided would be applied to R.B. and A.S.'s account.

89.    On or about February 1, 2011, STONE caused to be executed a deed transferring title of 43052 Sherbrooke Terrace from STONE back to R.B.

(In violation of Title 18, United States Code, Section 1349.)

## COUNTS TWO THROUGH FIVE
### (Wire Fraud)

THE GRAND JURY FURTHERS CHARGES THAT:

90.    From in or about December 2007 through in or about May 2010, within the Eastern District of Virginia and elsewhere, defendants CHARISE STONE and JOSE MARINAY, having knowingly devised a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses and representations, caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, for the purpose of executing such scheme and artifice to defraud.

## I.    The Scheme and Artifice to Defraud

91.    The scheme and artifice to defraud is more fully described in paragraphs 12 through 19 of this Indictment, which are realleged and incorporated in Counts Two through Five as if fully set forth herein.

## II.    Interstate Wire Communications

92.    On or about the respective dates listed below in Counts 2 through 5, within the Eastern District of Virginia and elsewhere, defendants CHARISE STONE and JOSE MARINAY, for the purpose of executing the scheme and artifice described above, knowingly transmitted and caused to be transmitted by wire communications in interstate commerce certain writings, signs, signals, and sounds as described below:

| Count | Date | Description/Property |
|-------|------|----------------------|
| 2 | May 28, 2009 | Electronic funds transfer (approximately $42,945.26) from Alliance Bank in Virginia to BB&T Bank through a server outside of the Commonwealth of Virginia<br><br>Property: 21377 Larue Court, Ashburn, VA |

| 3 | August 7, 2009 | Electronic funds transfer (approximately $19,500) from Alliance Bank in Virginia to BB&T Bank through a server outside of the Commonwealth of Virginia<br><br>Property: 5021 Grand Beech Court, Haymarket, VA |
|---|---|---|
| 4 | December 14, 2009 | Electronic funds transfer (approximately $450,000) from California to Fairfax, Virginia<br><br>Property: 15067 Barlow Drive, Waterford, VA |
| 5 | April 16, 2010 | Electronic funds transfer (approximately $10,214.41) from Alliance Bank in Virginia to BB&T Bank through a server outside of the Commonwealth of Virginia<br><br>Property: 41313 Windybush Drive, Leesburg, VA |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## COUNT SIX
### (False Statement)

THE GRAND JURY FURTHER CHARGES THAT:

93.     The allegations set forth in paragraphs 12 through 86 are repeated and reallaged as set forth fully herein.

94.     On or about March 5, 2008, within the Eastern District of Virginia and elsewhere, defendants CHARISE STONE and JOSE MARINAY, knowingly made a false statement and report for the purpose of influencing the action of Bank of America, the accounts of which were insured by the Federal Deposit Insurance Corporation, upon an application, commitment, and loan, and any change and extension of any of the same, by renewal, deferment of action, and otherwise, in that STONE and MARINAY signed a HUD-1 settlement statement that falsely stated there was a $250,000 unrecorded mortgage on property located at 11934 Washington Street, Fairfax, Virginia, when in truth and in fact, as the defendants well knew, no such unrecorded mortgage existed on the property.

(In violation of Title 18, United States Code, Sections 1014 and 2.)

## COUNT SEVEN
### (False Statement)

THE GRAND JURY FURTHER CHARGES THAT:

95.     The allegations set forth in paragraphs 12 through 86 are repeated and realleged as set forth fully herein.

96.     On or about May 27, 2009, within the Eastern District of Virginia and elsewhere, defendant CHARISE STONE, aided and abetted by JOSE MARINAY, knowingly made a false statement and report for the purpose of influencing the actions of CitiMortgage, the accounts of which were insured by the Federal Deposit Insurance Corporation, upon an application, commitment, and loan, and any change and extension of any of the same, by renewal, deferment of action, and otherwise, in that STONE signed and SCS sent to CitiMortgage a HUD-1 settlement statement falsely stating that $21,400 in commissions was paid to realtors, $2,948.75 was paid for title insurance, $4,102.50 was paid in state taxes, and $1,567.51 was paid in city and county taxes for the sale of property located at 21377 Larue Court, Ashburn, Virginia, when in truth and in fact, as the defendants well knew, no such payments were made and STONE collected all of those fees.

(In violation of Title 18, United States Code, Sections 1014 and 2.)

## COUNT EIGHT
### (Fictitious Obligations)

THE GRAND JURY FURTHERS CHARGES THAT:

97.     On or about July 6, 2010, in the Eastern District of Virginia and elsewhere,

CHARISE STONE, with the intent to defraud, did knowingly pass, utter, present, and attempt to

pass, utter, present, and offer, a false and fictitious instrument, document, and other item, namely

an instrument titled "International Promissory Note" in the amount of $21,000, appearing,

representing, purporting and contriving, through scheme and artifice, to be an actual security and

other financial instrument issued under the authority of the United States.

98.     Specifically, on or about July 6, 2010, STONE sent or caused to be sent a

fictitious instrument to Chase Card Services, purporting to be "credit upon sight to the payee"

stating that $21,000 was to be credited to Loan No. XXXXXXXXXXXXX7397 in the name of

CHARISE STONE, for the purpose of attempting to discharge STONE's debt with Chase Card

Services in the amount of $21,000.

(In violation of Title 18, United States Code, Section 514(a)(2) and 2.)

## COUNT NINE
### (Fictitious Obligations)

THE GRAND JURY FURTHERS CHARGES THAT:

99.     On or about July 6, 2010, in the Eastern District of Virginia and elsewhere,

CHARISE STONE, with the intent to defraud, did knowingly pass, utter, present, and attempt to

pass, utter, present, and offer, a false and fictitious instrument, document, and other item, namely

an instrument titled "International Promissory Note" in the amount of $49,000, appearing,

representing, purporting and contriving, through scheme and artifice, to be an actual security and

other financial instrument issued under the authority of the United States.

100.     Specifically, on or about July 6, 2010, STONE sent or caused to be sent a

fictitious instrument to Capital One Bank, purporting to be "credit upon sight to the payee"

stating that $49,000 was to be credited to Loan No. XXXX-XXXX-XXXX-6925 in the name of

Charise Stone/NVA Mgmt LLC, for the purpose of attempting to discharge STONE's debt with

Capital One Bank in the amount of $49,000.

(In violation of Title 18, United States Code, Section 514(a)(2) and 2.)

## COUNT TEN
### (Corrupt Endeavor to Obstruct and Impede the Due Administration of the Internal Revenue Laws)

THE GRAND JURY FURTHERS CHARGES THAT:

101.    From in or about April 12, 2008, and continuing thereafter up to and including July 9, 2012, in the Eastern District of Virginia and elsewhere, defendant CHARISE STONE did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws by, among other things:

      a.  On or about April 12, 2008, STONE filed or caused to be filed with the IRS an "Application for Automatic Extension of Time To File U.S. Individual Income Tax Return," IRS Form 4868, which automatically extends the time to file an individual income tax return by six months.  The form STONE filed or caused to be filed with the IRS falsely states "0" on line 4, "Estimate of total tax liability for 2007" as well as line 6, "Balance due."

      b.  On or about June 4, 2012, STONE sent a packet of documents to the IRS, including a fictitious "Private Registered Setoff Bond" in the amount of $5,000,000 to "balance and settle" the taxpayer account for Charise Shanell Stone.

      c.  On or about July 3, 2012, STONE sent a packet of documents to the IRS, including a fictitious "Private Registered Setoff Bond" in the amount of $10,000,000 to "balance and settle" the taxpayer account for NVA Management LLC.

      d.  On or about July 3, 2012, STONE sent a packet of documents to the IRS, including a fictitious "Private Registered Setoff Bond" in the amount of $5,000,000 to "balance and settle" the taxpayer account for her husband, T.C.

e.  On or about July 3, 2012, STONE sent a packet of documents to the IRS,

including a fictitious "Private Registered Setoff Bond" in the amount of $10,000,000 to

"balance and settle" the taxpayer account for Stone Capital Funding Inc.

(In violation of Title 26, United States Code, Section 7212(a).)

## COUNT ELEVEN
### (Failure to File Individual Tax Return)

THE GRAND JURY FURTHERS CHARGES THAT:

102.    During the calendar year 2007, CHARISE STONE, who was a resident of Ashburn, Virginia, had and received gross income in excess of $17,500. By reason of such gross income, she was required by law, following the close of the calendar year 2007 and on or before October 15, 2008, to make an income tax return to the Internal Revenue Service at or near Ashburn, Virginia, or to any proper officer of the Internal Revenue Service, stating specifically the items of her gross income and any deductions and credits to which she was entitled. Well knowing and believing the foregoing, STONE did willfully fail to timely make an income tax return.

(In violation of Title 26, United States Code, Section 7203.)

## COUNT TWELVE
### (Failure to File Individual Tax Return)

THE GRAND JURY FURTHERS CHARGES THAT:

103.    During the calendar year 2008, CHARISE STONE, who was a resident of Ashburn, Virginia, had and received gross income in excess of $17,900.  By reason of such gross income, she was required by law, following the close of the calendar year 2008 and on or before April 15, 2009, to make an income tax return to the Internal Revenue Service at or near Ashburn, Virginia, or to any proper officer of the Internal Revenue Service, stating specifically the items of her gross income and any deductions and credits to which she was entitled.  Well knowing and believing the foregoing, STONE did willfully fail to timely make an income tax return.

(In violation of Title 26, United States Code, Section 7203.)

## COUNT THIRTEEN
### (Failure to File Individual Tax Return)

THE GRAND JURY FURTHERS CHARGES THAT:

104.    During the calendar year 2009, CHARISE STONE, who was a resident of Ashburn, Virginia, had and received gross income in excess of $18,700.  By reason of such gross income, she was required by law, following the close of the calendar year 2009 and on or before April 15, 2010, to make an income tax return to the Internal Revenue Service at or near Ashburn, Virginia, or to any proper officer of the Internal Revenue Service, stating specifically the items of her gross income and any deductions and credits to which she was entitled.  Well knowing and believing the foregoing, STONE did willfully fail to timely make an income tax return.

(In violation of Title 26, United States Code, Section 7203.)

**Forfeiture Notice**

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, Defendants CHARISE

SHANELL STONE and JOSE MARINAY are notified that upon conviction of any of the

offenses charged in Counts One through Seven herein, they shall forfeit to the United States any

property, real or personal, which constitutes or is derived from proceeds traceable to the

violations charged herein and any property involved in such offenses and traceable to such

offenses.  Property subject to forfeiture includes but is not limited to:

The sum of not less than $749,686.35, representing the proceeds of the offenses charged in
Counts One – Seven; and

Real property and improvements known as 43088 Unison Knoll Circle, Ashburn, Virginia
20148.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C); Title 18, United States
Code, Section 982(a); and Title 28, United States Code, Section 2461(c).)

A TRUE BILL

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____
Foreperson

DANA J. BOENTE
Acting United States Attorney
Eastern District of Virginia

By: _____
Uzo Asonye
Assistant United States Attorney

KATHRYN KENEALLY
Assistant Attorney General
Department of Justice Tax Division

By: _____
Todd A. Ellinwood
Trial Attorney